```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**KRISTINE LEA CRABTREE,**

        **Plaintiff,**

  vs.                                     Civil Action 2:14-cv-347
                                                    Judge Sargus
                                                      Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**I.   Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits.  This matter is before the Court for consideration of *Plaintiff's Statement of Errors and Memorandum in Support* ("*Statement of Errors*"), Doc. No. 15, the Commissioner's *Opposition to Plaintiff's Statement of Errors* ("*Commissioner's Response*"), Doc. No. 20, and plaintiff's reply, Doc. No. 21.

Plaintiff Kristine Lea Crabtree filed her application for benefits June 29, 2011, alleging that she has been disabled since April 15, 2011.  *PAGEID* 54, 159-65, 173-74.  The claim was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on December 20, 2012, at which plaintiff, represented by counsel, appeared and testified, as did John

R. Finch, who testified as a vocational expert, and Ronald E. Kendrick, M.D., who testified as a medical expert. *PAGEID* 54, 90. In a decision dated January 22, 2013, the administrative law judge concluded that plaintiff was not disabled from April 15, 2011, through the date of the administrative decision. *PAGEID* 54-61. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 22, 2014. *PAGEID* 38-40.

Plaintiff was 46 years of age on the date of the administrative decision. *See PAGEID* 61, 159. She has at least a high school education, *PAGEID* 59, and the administrative law judge found that she has past relevant work as a surveillance systems monitor and respiratory therapist. *PAGEID* 60. Plaintiff is insured for disability insurance purposes through December 31, 2016. *PAGEID* 56. She has not engaged in substantial gainful activity since April 15, 2011. *Id*.

**II. Medical Evidence**

Plaintiff underwent a posterior lumbar fusion of L4-5, L5-S1 in 2008, and treated with Mark A. White, D.O., following her surgery. *PAGEID* 254. On August 11, 2008, plaintiff indicated that she had "50% improvement in her back pain," and Dr. White noted that plaintiff was "doing very well." *Id*. Dr. White also noted that plaintiff's continued complaints of back pain were "most likely . . . related to deconditioning and overuse from standing for 12 hours a day [at work]." *Id*. On examination, plaintiff's incision was completely healed, she had normal strength and sensation, straight leg raising

was negative, and plaintiff demonstrated a narrow-based and steady gait without antalgic features.  *ID*.  X-rays of plaintiff's lumbar spine showed "no instability, solid fusion is apparent, and no significant adjacent level segmental instability."  *ID*.  Dr. White diagnosed status post posterior lumbar fusion L4 to S1 with resolving mechanical back pain and mild backache most likely due to continued deconditioning.  *Id*.

Plaintiff treated with Dr. White on August 29, 2008, after she was assaulted by her roommate.  Upon examination, plaintiff had mild tenderness of the lumbosacral region.  *PAGEID* 252.  X-rays of the lumbar spine showed "her fusion to be solid," "pedicle screws are well-maintained," and no "evidence of damage to her fusion construct."  *Id*.  Dr. White diagnosed status post lumbar fusion L4 to S1 with exacerbation following traumatic assault which most likely is musclular in etiology.  *Id*.  On October 16, 2008, Dr. White diagnosed plaintiff with "[s]tatus post lumbar fusion L4 to S1 with continued back pain with narcotic-dependency[;] however, the patient is willing to try and wean off her narcotics" and "[w]ork related contributing factor to back problems, i.e., working 12 hour shifts with pushing, pulling and lifting."  *PAGEID* 250.

Plaintiff was evaluated by Sudhir Dubey, Psy.D., on August 18, 2011.  *PAGEID* 265-70.  Dr. Dubey assigned a global assessment of functioning score of 70 and diagnosed pain disorder with general medical and psychological factors.  *PAGEID* 269.  Dr. Dubey opined that, in a work setting, plaintiff would be able to understand,

3

remember, and carry out instructions and maintain attention, concentration, persistence, and pace sufficient to perform simple and multistep tasks. *PAGEID* 269-70.

Plaintiff was evaluated by Robert D. Whitehead, M.D., on September 26, 2011. *PAGEID* 272-74. Dr. Whitehead described plaintiff as a "well-developed, overweight female in no apparent distress." *PAGEID* 273. Upon examination, plaintiff had a normal gait, normal range of motion without spasm or tenderness in the cervical and thoracic spine, and diffuse tenderness bilaterally in the paravertebral and midline region with restricted range of motion. *PAGEID* 273-74. Dr. Whitehead diagnosed chronic low back pain without active radiculopathy. *PAGEID* 274. Dr. Whitehead provided the following "medical source statement:" "Examination today would suggest this individual would be best suited for most sedentary jobs with the ability to sit and stand as needed for comfort. No repetitive bending or lifting." *Id*.

A September 26, 2011 exam of plaintiff's lumbar spine by Charles H. Muncrief, D.O., revealed "[v]ertical suspension rods and pedicle screws fuse L4, L5 and S1. Disc support device is noted at the L4-5 level. There has been laminectomy of L4. No acute fracture or malalignment is seen. Disc spaces are well maintained." *PAGEID* 275.

Plaintiff treated with David Brill, M.D., from February 17, 2000, until at least September 2011. *PAGEID* 281, 297-99. Dr. Brill treated plaintiff for chronic low back pain and prescribed methadone. *PAGEID* 284. On September 12, 2011, plaintiff indicated that the methadone

4

helped with pain but that she was still not able to function at work. *Id*. On January 24, 2012, Dr. Brill completed a medical source statement. *PAGEID* 280-82. Dr. Brill diagnosed plaintiff with chronic lower back pain following "surgery L4-5." *PAGEID* 281. When asked to describe the nature of plaintiff's symptoms, Dr. Brill noted: "Pt states cannot work due to [low back pain]." *Id*. When asked about plaintiff's limitations, Dr. Brill stated: "She states that between pain [and] opiates she is unable to work." *PAGEID* 282. Dr. Brill also indicated that plaintiff was prescribed methadone and that, according to plaintiff, she "cannot work while on this." *Id*.

Plaintiff was evaluated by Tracy L. Hiltz, P.T., on February 28, 2012. *PAGEID* 286-96. Plaintiff reported pain in the low back, right thigh, and bilateral buttocks, which Ms. Hiltz found was "consistent with the observed movement patterns." *PAGEID* 207. Ms. Hiltz noted the following pain behaviors during the evaluation: antalgic gait, rubbing right thigh and low back, stretching between tasks, and frequent position changes between tasks. *Id*. Ms. Hiltz opined that plaintiff's overall level of work

> **Falls within the Sedentary range.** Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exist up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exist from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. **Please see the Task Performance Table for specific abilities.**

5

*PAGEID* 286 (emphasis in original).  Ms. Hiltz opined that plaintiff had the following tolerance

> for the 8-Hour Day: Based on this evaluation, the client is capable of sustaining the Sedentary level of work for an 8-hour day/40-hour week.  Due to the limited sitting tolerance, however, the client will need to alternate among other tasks listed in the task performance table to maximize work tolerance to the 8-hour day.

*Id*.  The Task Performance Table indicates that plaintiff can floor to waist lift seven pounds occasionally, waist to eye level lift seven pounds occasionally, two handed carry seven pounds occasionally, one handed carry "L7" pounds occasionally, push six pounds occasionally, and pull five pounds occasionally.  *PAGIED* 290.  The pushing and pulling limitations reflect "the amount of force the client exerted during the pushing pulling tasks."  *Id*.  The Task Performance Table also indicates that plaintiff can occasionally perform the tasks of sitting, standing, climbing stairs, repetitive squatting, walking, crawling, repetitive trunk rotating-sitting, and repetitive trunk rotating-standing.  *Id*.  Plaintiff can constantly forward reach, but can never use her arms for over head-standing, nor could she work bent over, kneeling, or climbing a ladder.  *Id*.

Bruce Goldsmith, Ph.D., reviewed the record and, on September 1, 2011, opined that plaintiff's "pain disorder is not severe" and that plaintiff had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  *PAGEID* 124.

Caroline Lewin, Ph.D., reviewed the record and, on January 18, 2012, affirmed Dr. Goldsmith's assessment.  *PAGEID* 135-36.

6

Elizabeth Das, M.D., reviewed the record and, on October 10, 2011, completed a residual functional capacity assessment. *PAGEID* 126-27. Dr. Das opined that plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. *Id*. Plaintiff could occasionally climb ladders/ropes/scaffolds, frequently stoop, and frequently crouch. *Id*.

Gerald Klyop, M.D., reviewed the record and, on January 27, 2012, affirmed Dr. Das's assessment. *PAGEID* 137-38.

### III. Administrative Hearing

Plaintiff testified at the administrative hearing that she lives with her two daughters and her father in a house that she owns. *PAGEID* 95. Plaintiff occasionally drives her daughters to school; she drove to the administrative hearing. *PAGEID* 96, 99. Plaintiff last worked in 2011 as a respiratory therapist working 50 to 60 hours a week, but she could no longer perform the job because of low back pain and the side effects of her medication. *PAGEID* 97-98, 100. Plaintiff testified that methadone, which is prescribed for pain, makes her drowsy. *PAGEID* 99-101. While working, plaintiff fell asleep on the job and napped in her car during breaks. *PAGEID* 101.

Plaintiff testified that she worked as a surveillance monitor with Sonitrol Security when she was 19 years of age. *PAGEID* 111, 116. Plaintiff testified that, contrary to what is contained in Exhibit 2E, she did not work as a surveillance monitor from 1992 to 2002; she worked "in respiratory for 15 years." *PAGEID* 114-15.

The medical expert testified that plaintiff's impairments consist of lumbar fusion from L4 to S1 performed in 2008. *PAGEID* 103-04. The medical expert cited Ms. Hiltz' opinion (Exhibit 8F) and opined that plaintiff "would be capable of just doing sedentary work considering her pain issues." *PAGEID* 106. The administrative law judge inquired whether the job would need to be a "low pressure, low stress job," and the medical expert responded "I think so." *PAGEID* 106-07. The administrative law judge inquired whether the job would need "no strict quotas" and "a sit/stand option," and the medical expert responded "Correct" to both. *PAGEID* 107. The medical expert also opined that plaintiff could occasionally bend, stoop, kneel, and crawl; sit six hours per day; and walk/stand together for two hours per day. *Id*. When cross-examined by plaintiff's counsel, the medical expert agreed that Ms. Hiltz' conclusion that plaintiff was capable of sedentary work was contradictory to her findings in the Task Performance Table portion of her evaluation. *See PAGEID* 109-10.

The vocational expert testified that plaintiff has past relevant work as a respiratory therapist and as a surveillance monitor. *PAGEID* 111-12. The vocational expert was asked the following hypothetical:

> ALJ: Okay. All right. I want you to assume a person of same age as the claimant, she is 34, 12 -- 46. Same educational level, same job history, the same educational level. Could that -- Dr. Kendrick, did we talk about how much she could lift and carry?
>
> ME: Yes. I thought it would be 10 pounds occasionally.
>
> ALJ: Ten occasionally.
>
> ME: And five pounds frequently.

8

>    ALJ: Okay.
>
>    Examination of Vocational Expert by Administrative Law Judge
>
>    Q Okay. Same job history, same education and so forth. Okay. Do you need anything from Dr. Kendrick repeated?
>
>    A. No.
>
>    Q. Okay. Could that person do any of the claimant's past relevant work?

PAGEID 112-13. According to the vocational expert, such an individual could not "do the work of a respiratory therapist, but could do the work of a surveillance monitor." PAGIED 113. The vocational expert also testified that such an individual would be able to perform the requirements of a work order clerk, DOT 209-562-014, of which there are 2,500 such jobs in central Ohio. *Id*.

The vocational expert also testified that the limitations of lifting, pushing, pulling, standing, and sitting found in the Task Performance Table portion of Ms. Hiltz' evaluation would preclude all work. PAGEID 117. When questioned by the administrative law judge, the vocational expert stated that the limitation to occasionally sitting and the inability to lift and carry 10 pounds frequently would preclude even sedentary work. PAGEID 117-18.

**IV. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of "chronic back pain, S/P a lumbar fusion at L4 through S1 in 2008." PAGEID 56. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed

9

impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a).
>
> . . .
>
> Specifically, the claimant can do sedentary work with a sit/stand option (Exhibit 8F). More specifically, I agree with the medical expert, Dr. Kendrick, who testified that the claimant can sit for six hours in a workday and stand/walk for a total of two hours in a workday, although she requires the option of alternating between the sitting and the standing positions. She can lift and carry up to five pounds frequently and ten pounds occasionally, and she is limited to jobs that require no more than occasional bending, stooping, kneeling, and crawling. He further testified that she is limited to low-pressure, low stress jobs with no strict production quotas. I agree with this conclusion.

*PAGEID* 57. Relying on the testimony of the vocational expert, the administrative law judge found that this RFC precludes plaintiff's past relevant work as a respiratory therapist, but does not preclude the performance of plaintiff's past relevant work as a surveillance systems monitor. *PAGEID* 60. The administrative law judge relied on the testimony of the vocational expert and found, alternatively, that "even if the plaintiff's work as a surveillance systems monitor was not performed in the 'relevant past,'" plaintiff is still able to perform a significant number of jobs in the national economy, such as "work order clerk (D.O.T. 209562.014)." *PAGEID* 60-61. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 15, 2011, through the date of the administrative decision. *PAGEID* 61.

**V.   Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues, first, that the administrative law judge improperly evaluated the medical evidence of record. *Statement of Errors*, pp. 7-10. Plaintiff specifically argues

11

that the administrative law judge erred in evaluating the opinions of Dr. Brill, Dr. Whitehead, and Ms. Hiltz.  *Id*.

As noted *supra*, plaintiff was evaluated by Ms. Hiltz on February 28, 2012.  *PAGEID* 286-96.  As a physical therapist, Ms. Hiltz is properly classified as an "other source."  *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists), *with* 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 404.1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists are considered "other sources," rather than "acceptable medical sources").  *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001) ("This report is not afforded significant weight because a physical therapist is not recognized as an acceptable medical source.") (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997)).  Although Ms. Hiltz' opinion is entitled to consideration, *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011), it is not a "medical opinion," *see* 20 C.F.R. § 404.1527(a)(2)("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."), and it is not entitled to "controlling weight."  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

234, 242 (6th Cir. 2007). Rather, administrative law judges are vested with the "discretion to determine the proper weight to accord opinions from 'other sources.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Walters*, 127 F.3d at 530). Evidence from other sources may be considered "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(d)(1). Among the factors to be considered in evaluating the opinions of these "other sources" are the length of time and frequency of treatment, consistency with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, whether the source has special expertise, and any other factor supporting or refuting the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006). An administrative law judge need not weigh all the factors in every case; the evaluation depends on the particular facts in each case. *See id*. at *5. However, an administrative law judge "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id*. at *6.

In forming plaintiff's RFC, the administrative law judge quoted the "Tolerance for the 8-Hour Day" portion of Ms. Hiltz's opinion:[1]

---

[1] In quoting Ms. Hiltz' opinion, the administrative law judge omitted reference to the Task Performance Table contained at page five of Ms. Hiltz' evaluation. The unaltered version of the relevant portion of Ms. Hiltz' opinion is as follows:

13

> Tolerance for the 8-Hour Day: based on this evaluation, the client is capable of sustaining the Sedentary level of work for an 8-hour day/40-hour week.  Due to the limiting sitting tolerance, however, the client will need to alternate (position) . . . to maximize work tolerance to the 8-hour day.

*PAGEID* 59 (alteration and ellipsis in original).  The administrative law judge also noted that plaintiff drove herself to Ms. Hiltz' February 28, 2012 evaluation.  *Id*.  The administrative law judge specifically referred to Ms. Hiltz's opinion in formulating plaintiff's RFC: "Specifically, the claimant can do sedentary work with a sit/stand option (Exhibit 8F)."  *PAGEID* 57.  The administrative law judge concluded that this RFC "is supported by the assessment at Exhibit 8F, by Dr. Kendrick's testimony, and by the testimony of the claimant herself concerning her activities of daily living."  *PAGEID* 60.  The administrative law judge assigned the "greatest weight" "to the testimony of Dr. Kendrick, as it is thorough, well-reasoned, and supported by the objective clinical findings."  *Id*.

   Plaintiff argues that the administrative law judge erred in evaluating Ms. Hiltz's opinion by failing to describe what weight was given to the opinion, by failing to mention the limitations in the Task Performance Table portion of Ms. Hiltz's opinion, and by failing

---

> Tolerance for the 8-Hour Day: Based on this evaluation, the client is capable of sustaining the Sedentary level of work for an 8-hour day/40-hour week.  Due to the limiting sitting tolerance, however, the client will need to alternate among other tasks listed in the task performance table to maximize work tolerance to the 8-hour day.

*PAGEID* 286.

to recognize and resolve inconsistencies in Ms. Hiltz' opinion. *Statement of Errors*, pp. 7, 9-10.

The Commissioner argues that, "[a]lthough Ms. Hiltz listed specific limitations in the Performance Table (Tr. 253), she accommodated all of Plaintiff's limitations (including those listed in the Performance Table) when she assessed Plaintiff's ability to work for an eight-hour day (Tr. 249)." *Commissioner's Response*, p. 12. The Commissioner further argues that the administrative law judge's RFC, "which limited Plaintiff to less than a full range of sedentary work with the option to alternate between sitting and standing (Tr. 20), was consistent with Ms. Hiltz's opinion (Tr. 249-54)." *Commissioner's Response*, p. 12. The Commissioner's arguments are not well taken.

There is no doubt that the administrative law judge considered Ms. Hiltz's opinion and assigned it great weight; the administrative law judge's RFC specifically refers to her opinion. *PAGEID* 57 ("Specifically, the claimant can do sedentary work with a sit/stand option (Exhibit 8F))." However, the administrative law judge misrepresented Ms. Hiltz's opinion as merely indicating that "the claimant can do sedentary work with a sit/stand option." Ms. Hiltz's opinion also contains a definition of "Sedentary" work, which refers to the specific abilities identified in her Task Performance Table. *Id*. The administrative law judge made no reference to Ms. Hiltz's definition of Sedentary work or to Ms. Hiltz's Task Performance Table. This omission is significant because the findings in the Task

15

Performance Table are more restrictive than the Commissioner's definition of sedentary work, *see* 20 C.F.R. § 404.1567(a), and, contrary to the administrative law judge's finding, *see PAGEID* 60 ("[T]he above residual functional capacity assessment is supported by the assessment at Exhibit 8F . . . ."), are inconsistent with the RFC found by the administrative law judge.  The vocational expert testified that the limitations found in the Task Performance Table would preclude sedentary work.  *PAGEID* 117-18.  The medical expert also testified that the limitations in the Task Performance Table are inconsistent with a finding that plaintiff could perform sedentary work, as that term is defined by the Commissioner.  *See PAGEID* 109-10.  The administrative law judge did not acknowledge these inconsistencies.  Instead, the administrative law judge cited the entirety of Ms. Hiltz's opinion in finding that plaintiff "can do sedentary work with a sit/stand option."  *PAGEID* 57.

The administrative law judge's categorization of Ms. Hiltz's opinion as simply a limitation to sedentary work with a sit/stand option does not take into account Ms. Hiltz's definition of sedentary work, which is contrary to the Commissioner's definition of sedentary work and which would be work preclusive.  *See PAGEID* 109-10; 117-18.  The administrative law judge therefore erred in her evaluation of Ms. Hiltz's opinion, and her RFC determination, which relies on Ms. Hiltz's opinion, is therefore not supported by substantial evidence.

Under these circumstances, the Court concludes that the matter must be remanded for further consideration of Ms. Hiltz's opinion.

Having concluded that this action must be remanded on this basis, the Court need not and does not address plaintiff's remaining arguments.

It is accordingly **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** to the Commissioner of Social Security for further consideration of Ms. Hiltz's opinion.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

December 12, 2014                              *s/Norah McCann King*
                                               Norah M<sup>c</sup>Cann King
                                               United States Magistrate Judge